Mr. Marquetos, we'll hear from you, Your Honor. May it please the Court, good morning, my name is Pete Marquetos, I represent the Vokata stockholders. The District Court dismissed this case under the Texas Securities Act, pursuant to a Rule 12b6 motion to dismiss, based on the affirmative defense of race judicata, applied to a non-arbitrable award, and a non-arbitrable claim, and a non-final arbitration award. This case is the only federal case we have found, and there has been none cited by our opponent either, where a motion to dismiss for 12b6 purposes was applied to a prior arbitration award and an affirmative defense of race judicata, to dismiss a claim with prejudice. A 12b6 motion, of course, is heavily disfavored, rarely granted, and will not be granted unless the moving party can establish all the elements of its affirmative defense beyond doubt. Now, it is no small measure of irony that the District Court dismissed this case for judicial economy and finality, claiming or stating in the award, in the order, that it would be injudicious to require I mean, it was dismissed solely on a legal point, right? It was dismissed solely on a legal point, Your Honor. You had full time to respond to it, to respond to the motion to dismiss on the basis of race judicata. We did, Your Honor. The point that How were you prejudiced by this in any way? Why are you saying that it should be handled differently, and how should it have been handled? It should have been handled by denying the motion to dismiss, Your Honor, because our claim is now gone with prejudice. And the reason that the Court dismissed the claim with prejudice was because it found four elements of race judicata when two were not present. Most important, and the easiest point, is that the Court found that the prior arbitration award was final. The prior The trouble with saying it's not final is Judge Solis thought it was final. In other words, he didn't vacate the award. The panel, the arbitration panel, clearly, repeatedly said it was final. Judge Lindsay thought it was final. And you never said it wasn't final. So, everybody in the orbit of this has said it's final. Now, there is the quirk that there was a remand for clarification. So, if nobody, Solis, Lindsay, anybody has said this isn't final for purposes of race judicata until now. I must respectfully disagree, Judge Higginson. Judge Solis exactly did find that the arbitration award was not final. Did he vacate it? He didn't. He remanded it for a determination of out-of-pocket damages. So, it's gone back to the panel, and it's still sitting there. For clarification of findings. No? Judge Higginson, no, sir. He specifically found in his order that the panel had not ruled on out-of-pocket damages. And, in fact, the last thing in Judge Solis' order is he remanded for the panel to determine the issue of out-of-pocket damages, which was submitted to it, but not resolved. Nuance challenged that ruling by Judge Solis to this court. And this court declined to exercise jurisdiction because Judge Solis, in having remanded an arbitration award back to the panel for a determination of an unresolved damages issue, was a non-final order. So, why didn't you argue that it was non-final in front of Judge Lindsay? Your Honor, I believe that we did, twice. We attached Judge Solis' opinion at the first opportunity to our response to their motion to dismiss. The way that the procedure had happened, Your Honor, they filed a motion to dismiss in November of 2012. Judge Solis' opinion was not rendered until August of 2013. And our response, which came after Judge Solis' opinion, attached it. And we specifically pointed out that Judge Solis had remanded this case back to the panel. We attached it to our response at the first opportunity. If he remanded a completely divisible and separate issue, do you agree that under the logic spelled out in Grinberg, there could be race judicata as to an issue that was not being remanded? Yes. Okay. But your argument is these two are just inextricably tied. It is the out-of-pocket damages that they claim is the basis for race judicata. If you lose on your second issue and the panel is a court of competent jurisdiction to consider the securities fraud matter, then you would have moved to compel, correct? You would have moved to compel arbitration of the second issue of the securities fraud claim. Moved to compel. You would have asked the panel to resolve that, too. It's just that both sides have been saying that issue wasn't arbitratable, right? We didn't bring the Texas Securities Act claim in. I know, but it would be part and parcel if the scope of arbitration included it. Yes. If the scope of arbitration included a non-arbitrable claim, that is, if the scope was in fact broader than the panel had jurisdiction over and encompassed the Texas Securities Act claim, we would be foreclosed from having brought it in the district court. Okay. So if you lose on that second or fourth issue of race judicata, then the proper relief would be to get this to the panel that still has the matter pending. I believe that's correct, Your Honor, and the reason for that is— Okay. I mean, I don't mean to interrupt, but I just want one final question. I'll stop asking you questions. What is the status of the panel matter? Your Honor, four and a half years after we filed our demand and a year and a half after it was remanded, they still have not decided the issue. Okay. So you're certain of that? There's been no ruling below? Not only certain, Your Honor. I'm involved in the actual arbitration itself. The panel's been deliberating for over a month. Over a month? Well, over a month since oral argument after the remand. So you had oral argument. They accepted full briefing. They had full oral argument, and the notion that this was already decided, as nuance has been urging throughout its briefing, is just not correct. They overlooked it. And we've now had full briefing from both sides, and the panel has been deliberating for a month and still has not made a determination. But— On this issue of whether this could have been brought, your Texas Securities Act claim in the arbitration— Yes, sir. —sounds like you're trying to differentiate that from the claims that were brought based on the remedies that's available. But why does that affect the arbitration clause? I mean, the arbitration clause says basically anything that relates to the earn-out consideration. Thank you, Judge Costa. The arbitration clause in this case is a narrow clause, as Judge Jolly in the Ford opinion discussed, whether something relates to an arbitration clause for the purposes of a race judicata analysis. In this case, the— The New York courts said that relates to is very broad language. Yes, Your Honor. It is broad language. Relates—so in other words, if in this case, Judge Costa, we had a merger agreement that dealt with a $20 million initial payment and a $21 million earn-out, and the agreement contained an arbitration clause that said all disputes relating to this agreement will be rendered to—sent to arbitration, that would be a broad clause, no question. This is not that. This case has a broad governing law clause requiring all disputes to be litigated in court. With two specific exceptions, the arbitration clause for earn-out disputes, post-merger earn-out disputes, post-contractual earn-out disputes, and indemnification. Everything else goes to court. And so that, under New York law, is a narrow clause because it's subject-matter specific. I thought that the earn-out tranches approach was what induced you to enter into the merger agreement. No question that it did. And there is no argument from VOCADA stockholders that the subject matter, the factual underpinnings of the misrepresentations, were connected to the post-contractual ability to make the earn-out. There is no argument from us that the subject matter of the false representations pre-contract were those representations intended to induce the stockholders into the merger agreement, believing that, as the panel found, making the entire earn-out was realistic. But to find, under this court's authority, that relates to the earn-out consideration, capital E, capital C, which is a term that is defined only in the merger agreement, somehow encompasses pre-contractual fraud. Texas Securities Act claim that doesn't seek to recover the earn-out, that doesn't implicate the earn-out consideration in any way, shape, or form, goes beyond the pale. And Judge Jolly pointed out in the Ford opinion why this is so. A question as to whether or not a claim relates to an arbitration provision, such as this, the earn-out consideration, is whether or not the claim can be maintained legally without reference to the earn-out consideration. That is the defined term in the merger agreement. Nuance has made the same mistake, as did the district court below, that the HMOs made in the Ford opinion that Judge Jolly and this circuit and this court pointed out was a mistake. What you look for in deciding whether or not a claim relates to an arbitration clause, a tort claim, such that it's encompassed, is whether or not you have effectively argued a breach of contract claim disguised as a tort. The problem with your argument, as I understand from the briefs, is that your securities fraud claim is essentially the same thing. It's wrapped around the earn-out considerations, and without that, that's the whole basis of your claim. Judge Jolly. Tell me why that's not so. Because the Texas Securities Act claim has nothing to do with the earn-out consideration. I know, but the subject of it, clearly, I mean, that's the entire subject of your securities claim. No, Judge Jolly, I respectfully disagree. May I explain why? What evidence would be relevant in your securities claim that is not relevant to the earn-out provisions? The relevant evidence would be what was the value of Volcata's stock at the time— That's a damages question. It is. The distinction you're drawing is as to—well, you should answer this question. Thank you. No, no, no. Go ahead. It is a damages question, Judge Higginson, which is the only—here are the claims, if you look at the elements of the claim that we've actually pled, that we were—we sold stock to nuance under false pretense. So the fraud is the exact same. Your allegations of what caused the fraud, the inducement, exact same. But because the Texas fraud has a different damages prospect, that takes it out of the related to language? No, Judge Higginson. The fraud—to be clear, the fraud was not an arbitrable claim either to begin with. Well, that's your contention, but that's second issue. It's our contention. It's not only our contention, Your Honor. It's something that nuance repeatedly conceded below. You're saying they're a stop from saying otherwise? I'm saying they're right. They were right, and you're saying they can't sort of backtrack now before us? They can try to backtrack, Your Honor, but let me just tell you that the point is that they were correct, we were correct, and the panel was correct. We stipulated to the fraud claim, which was outside of the earn-out consideration, because half of the fraud claim and the breach of contract claim sought recovery of the earn-out consideration. The $21 million earn-out consideration was implicated by both the breach of contract claim and statutory fraud because in Texas, under Formosa, we could recover those damages. Are you saying that you could not have brought the securities claim before the arbitration? Is that for sure? We could have had we entered into a stipulation with nuance, but we could not, Judge Jolly, have been compelled to bring it. No party is required to bring an arbitration claim that he has not agreed to. Is the stipulation in this record? It is. Do you know the site? It's referred to in the briefs, but I didn't see it. Yes. You can find it under a rebuttal argument. Yes. I believe it's in — at 916 of the record, we cite to the — it is a citation to the agreement in the arbitration. Does the stipulation necessarily mean that the other side didn't think your fraud claim was subject to the arbitration clause? Because it looks like there were just a lot of stipulations, and parties in litigation often just stipulate to a bunch of things. It doesn't mean there was a dispute about it. It's sort of just being cautious. Was this disputed before the stipulation? Mr. Clerk, give each side two more minutes. Thank you. Judge Costa, here's what nuance thought. Because the parties stipulated in a written order that the stockholders' claims set forth in the demand were arbitrable, they were not required to do so, but the parties stipulated to the arbitrability of the fraudulent inducement claim. This is nuance at 919 of the record. Although not expressly required by the terms of the merger agreement, plaintiffs made the strategic decision to try before the panel a fraudulent inducement claim under Section 27.01. That's at 1019. The parties agreed and stipulated in a written order that the panel had subject matter jurisdiction over an otherwise non-arbitrable fraudulent inducement claim. Nuance at 1022. No question that the out-of-pocket portion of our fraud claim was not within the scope of the arbitration clause. We stipulated to that because the other half of our fraud claim would have been, because it was seeking the earn-out consideration as benefit of the bargain damages. Now, absent that, we never would have been required to bring that claim. We could have brought it in court. But their argument, Judge Higginson, is that having stipulated to that claim, brought it in arbitration, we are now bound as to any other claim that arises out of the same transaction. And that is exactly the mistake that the district court made and the First Circuit pointed out in the Wohl versus Gruntal case. You can never convey or confer jurisdiction over non-arbitrable claims from having brought another non-arbitrable claim by agreement in arbitration. Did you ask for a stipulation on the Texas Securities Act claim? I mean, given the substantial overlap with the fraud, fraudulent inducement claim, they did agree to go forward. We did. We specifically did not agree to bring our claims. And that was addressed in the Wohl versus Gruntal case, Judge Costa. If they wanted to confer jurisdiction on the panel over all of our non-arbitrable claims, they could have sought and obtained a stipulation from us. That issue was specifically addressed by the Fifth Circuit, Wohl versus Gruntal. But we did not so agree, and we are not so bound, because arbitration is a creature of contract. Okay, Mr. Morkadis. Thank you, Your Honor. You've saved some time for rebuttal. Mr. Silbert, we'll have you. Good morning, and may it please the Court. I'm Greg Silbert from Weill on behalf of Nuance. I'd like to start with a finality issue. Until VOCADA moved to amend the final judgment in this case under Rule 59e, it never argued that the arbitral award was non-final for purposes of res judicata. But it did in this Rule 59e motion. In its 59e motion it did, Your Honor. That's correct. But that was after Judge Lindsay had already entered a final judgment in this case. So if Judge Lindsay had finished the order just saying waived and not walked into the merits, they wouldn't be preserved. But having then pursued . . . what's your case that says once he decided to address finality, its waiver still exists as an option? I think, Your Honor, it's beyond just a waiver in this case. I think what you're applying is the standard for a Rule 59e motion. And the standard . . . as this Court knows, you can affirm on any ground that's supported by the record. The standard that this Court has repeatedly set out for Rule 59e, and I'm going to quote it to you. This is from Ross. It says these motions, referring to 59e motions, quote, cannot be used to raise arguments which could and should have been made before the judgment issued. What's your best case applying that standard to state that a district court's subsequent merits analysis, if it contains error, won't be addressed because it wasn't preserved? We don't have a case with those exact factual circumstances, Your Honor. Do you agree that in his logic he was wrong when he said he had discretion? I think he made a very practical point, which the Court should take note of, which is that the exact same remedy that Vokada is seeking here is also in front of the arbitral panel when it's seeking out-of-pocket damages. So this whole lawsuit really accomplishes nothing. I think that's an important point that Judge Lindsay made. I think there's a more straightforward path to affirmance for this Court than the discretion argument that Judge Lindsay used. The first and the most obvious one is that this is a brand-new argument raised for the first time in a 59e motion, and this Court has said unequivocally that you can't do that. Now, you're right, Judge Higginson, that Judge Lindsay said in a footnote, you know, this is a new argument. And then he went on to say, but even assuming they had raised it, I find that it's meritless. And he went on and explained why it's meritless. But the fact that he did that does not mean that the standard for Rule 59e relief is now somehow relaxed. I think the argument that Vokada has made on that point is an argument about cross-appeal. That argument is simply confused. What Vokada has said is that somehow the absence of a cross-appeal with respect to the reasoning in Judge Lindsay's decision on the 59e motion operates as a waiver of asserting their failure to satisfy the 59e standard. I think the Court is probably well aware that it's not possible, it would not have been possible for us to have cross-appealed from Judge Lindsay's order granting us the relief we requested. In general, there is no appeal or cross-appeal that grants you full relief because you appeal from a judgment or a decision, not from the reasoning supporting the decision. So the fact that, you know, Judge Lindsay's order was correct for reason A and we think it's also correct for reason B is not a basis for cross-appeal. The fact is, and I know Vokada has contested this, but I urge you to look at the record. The fact is Vokada never raised this argument until its 59e motion. If they'd raised it. The finality issue is a difficult one. So I would love just case law where there is a remand, but it seems ministerial or clarifying. Therefore, a court has said, well, it's incomplete, but it's still final. The closest case is this Court's decision in Grinberg. The trouble with Grinberg, it does look distinguishable on the basis that we were talking about a moment ago, that it's a completely discreet issue, whereas this is the central issue. Well, first of all, the only issue is the remedy, the damages question. So I think, first of all, that goes to the claim. We're talking about the conclusion of the claim, but even if— But if his response is that in fact there's now been extensive oral argument on the damages, that would suggest that some new finding or conclusion of law could come out of the panel and we could then end up with very piecemeal determinations of this very issue. We'd have two competing final rulings. But first, Judge Higginson, I want to note that any finding or conclusion that was new on that out-of-pocket damages would be preclusive in this case, right? It's the same remedy that they're seeking here that they're also seeking— It would be preclusive in this case. Under issue preclusion? Yes. But with respect to finality, I don't think that the distinction that Vokada draws carries water because the finality of a judgment, as the Court knows, goes to there has to be a conclusive decision with respect to all claims and all parties. That's when a judgment is final. So Vokada's ground of distinction for Grinberg was to essentially say, well, yeah, but that was remanded for sort of a different claim or different issue. Well, why does that affect the finality of the judgment? If there's still work to do for the arbitral panel, then one could have argued in Grinberg, Justice Vokada argues here, that the remand somehow rendered that judgment nonfinal because the arbitral panel potentially could have issued some new decision that contained new findings on some claim that was asserted in the case. And as you pointed out, Judge Higginson, the same is potentially true here. But the fact is, as you originally discussed with Mr. Marketos, the arbitral panel clearly thought its decision was final. Judge Solis did not vacate it. He remanded for clarification. The bones in dissent said virtually everything you're saying, which perceived complete finality as to all issues. Remind me, did you file a panel or full court rehearing motion? Yes, we did. And did you argue that it was final and therefore the panel's decision was incorrect for having perceived nonfinality? We did, but those arguments that you're talking about, Judge Higginson, are merits arguments. Remember, Judge Jones was in dissent only because the majority of the panel believed that the appellate jurisdiction was wanting. True, but there's a pretty close symmetry. She says we've got mischief now here because we're going to be ping-ponging back and forth. Correct. And I'm sure you embraced that view. Yes, we did. Explain to me why that's not defeating of finality for purposes of race judicata. Well, you know, you certainly don't have to agree with Judge Solis that the arbitral word was not final. Judge Solis's decision is an unreviewed district court decision that made a particular reading of the arbitral decision. That reading was wrong for all the reasons that Judge Jones explained. It's true that no panel of this court had a chance to review that on the merits, and it's true that our en banc motion was denied, but that certainly doesn't mean that a district court decision that happened to view the arbitral decision one way is now binding on this court. We know that Judge Lindsey read it another way, and if you do reach the finality question, you should read that arbitral word yourself and see what it says. And, you know, it says, quote, this award is in full settlement of all claims and counterclaims submitted to this arbitration. All claims not expressly granted are herein denied. Sounds like a final order to me. And remember, the standard for Rule 59E is, you know, not only can you not bring up new arguments, so vocata is barred at the starting gate, but even if it could assert the argument, it has to show a manifest error of law. First, if you were writing this, you'd say, Rule 59 standard not met, end of story. Period, yes. And then I would say... Then would you say, okay, second, alternatively, there's a defined and clear exception to finality, and it's the Grinberg Rule. I would say that you could go that route, or you could say if we were to review the arbitral word to determine whether it's final, we think that it is. And that's another basis to say... What about saying we are going to decide finality because the panel was the court of competent jurisdiction and, therefore, it should be merged together? That's still a third... There are many paths... You didn't develop that in your brief. What's the authority to do that? To say that... Well, I think it flows logically out of the competent jurisdiction argument, and I can address that now, if you like. I think Judge Lindsay was clearly correct in finding that this dispute relates to the earn-out consideration. And I want to flag an important point that was implicit in your question, Judge Costa, which is that this is a different kind of arbitration clause than the kind that you see in Ford and other cases that OCADA has relied on. Because in Ford, the arbitration clause... It provided for arbitration of claims arising out of the contract. And so, naturally, in order to determine arbitrability, the courts looked at whether the claims implicated the contract, whether they were contract claims, fraud claims were in another bucket, because they don't necessarily arise out of the contract. The arbitration clause in this case is very different. It's not based on the contract. It provides for arbitration of disputes that relate to a particular subject matter, the earn-out consideration. Now, the subject matter of this dispute is exactly the same as the subject matter that was arbitrated in the arbitration. And I believe I heard Mr. Marcados concede that. The fraud claim in the arbitration... And I'm going to get to your question momentarily, Judge Costa, about whether we agreed that the fraud claim was not arbitrable. We think it was arbitrable. But it's clear that the subject matter of this dispute when brought in court and when brought in the arbitration is the earn-out consideration. Because, as you said, Judge Scholle, there's no substance to the claim except the earn-out consideration. The entire basis of the alleged fraud is that there was an earn-out side letter that made representations about how Nuance was going to attempt to achieve the earn-out consideration, that because the earn-out consideration was of, quote, overriding importance to Vokada, and that's a quote from their petition, they were induced by that earn-out side letter to participate, to agree to the merger, and then, subsequently, those particular measures were not followed to achieve the earn-out consideration. That's the fraud, okay? So the notion that they could somehow assert that fraud claim but not reference the earn-out consideration makes no sense. The whole substance of the claim is the earn-out consideration. Now, let's talk about this stipulation that Ms. Marchetto says brought in the fraud claim in the arbitration. What I understand to have occurred is that Vokada asserted all the claims that it asserted, including, as count one, its statutory fraud claim, a claim that is functionally identical to the TSA claim here. It also asserted breach of contract and breach of good faith and fair dealing. There was a sort of a case management conference, and the arbitrators asked the parties whether there was any disputed arbitrability for any of the claims, and we said no. So, and the... I think you asked, Mr. Marchetto, whether the... Judge Higginson, I believe you asked whether the stipulation is in the record. The only thing that I've seen in the record is the case management order by the arbitrators, and it's, you know, sort of case scheduling order number one, and it says... It's at page 336 of the record. It says that the parties have stipulated that the claims are arbitral, referring to all the claims. It goes on to say in the next sentence that Nuance is going to move to dismiss the fraud claim, which we did, but not on jurisdictional grounds. We moved to dismiss on the merits because of the merger agreement in the contract. But there was no... To the best of my knowledge, and as far as I can see in this record, I was not involved in the arbitration, but there's nothing that suggests that the fraud claim was given any special treatment in the arbitration. Now, if... If Volcata had said at that time, hey, you know, we're going to assert this fraud theory in the arbitration, but we're going to assert an identical fraud claim, and there's absolutely no difference, even in remedy, on the facts of this case between the TSA claim and the securities fraud claim that they asserted in the arbitration. They're exactly the same. Same allegations, same damages for the out-of-pocket damages, same... So does that mean when the arbitration panel cleans up this issue and issues its ruling, there would also be... And if it's in your favor, that there'd be issue preclusion? Yes, it does, and I think that's the practical point to that... Or even if it's not in our favor, frankly. I mean, I'd be very surprised if it's not, but that's the practical point that Judge Lindsey was getting at, which is to say, look, you know, Volcata starts out this case saying all of the elements have already been determined except its claim for a remedy, which, by the way, has been remanded to the panel by Judge Solis. Okay, well then what is this action doing? Why was this action necessary at all? I believe that's the... It seems like Judge Lindsey could have also just stayed this case and said, I'm going to wait until the new arbitration decision and then this whole thing might be moot because of issue preclusion. And frankly, Judge Costa, if you would reverse, you shouldn't, but if you would reverse, then it's hard to imagine that that would not happen. I mean, this whole action accomplishes nothing, right? The claims are identical. Volcata admits that they've already been determined except for the remedy, which is already before the arbitral panel, so this claim is not really accomplishing anything. With respect to Ford, again, I want to emphasize that the issue in Ford was whether the claim could be asserted independent of the contract because of the nature of that arbitration. Well, in any event, I suppose that this panel could withhold any decision until something was done into arbitration. Yes, it could, Your Honor. And then that would tell us what we would do. Yes. Whether we had to work or whether we could lie on the beach for a while. That's correct, Your Honor, and I think the panel is focusing on something that is very apparent in this case that independent of the legal difficulties in Volcata asserting this claim which we believe are manifold and Judge Lindsay correctly identified them, there are very serious practical questions surrounding this entire lawsuit. Why was it brought? What is the purpose of it? What has it accomplished that is not already accomplished by the arbitration and the remand action that Volcata brought independently? Volcata says, well, going back to your point about finality, Judge Higginson, Volcata says, well, Grinberg doesn't apply here because here the exact same issue has gone back to the panel on remand as a result of Judge Solis' order. Okay, well, if that's true, why is that exact same issue being litigated in a separate arbitration? I mean, Volcata acknowledges that every issue that is presented in the case has already been presented in the arbitration including the remedy. I'm curious, who's the district judge in Manhattan that wouldn't confirm the award? Do you remember? I believe, Your Honor, that it was Judge Sullivan. I was not Is there any legal significance to that? No, that was just a question of the first filed action. So, Volcata brought Again, my understanding, and I'm an appellate lawyer, so I was not involved in those district court proceedings. My understanding is that there was an action to confirm in the SDNY that the district court judge, who I think was Judge Sullivan, stayed the action because what we now call the remand action was the first filed action, and then once Judge Solis ruled on that remand action, Judge Sullivan said essentially, well, at this point, there's no point going forward with a petition to confirm because it's already been sent back to the arbitral panel. I believe that's how that unfolded, and there was no appellate review or any further proceeding with respect to that. I'd like to touch quickly on What about the Wolfe decision he cites? Okay, so the Wolfe decision, which was not this court, it was the First Circuit. In Wolfe, there was a specific clause in the arbitral agreement that said that arbitration would not be mandated for federal securities claims, which was the claim that was being considered in Wolfe. Explicit carve-out, also in Wolfe, as in Ford, the relevant arbitration clause said there would be arbitration of claims that arise from the contract. When the district court judge in Wolfe went on and said, hey, look, I'm looking at the substance of the dispute in the arbitration and the substance of the dispute here and they seem the same to me, the First Circuit correctly reading that arbitration clause said no, that's not the question because you could have two claims that relate to the same factual matter. One arises from the contract because it asserts a breach of contract. The other doesn't. Here, you have claims that are, the arbitration clause, in this case, says there's going to be arbitration of claims that are any dispute that relates to a particular subject matter. It's the substance of the claim that determines arbitrability. The stipulation shows an acknowledgement on your part that the fraud claims weren't arbitrable under the clause. I think you said at the beginning you'd address it. There's no stipulation that I know of that says that. What Mr. Marketos referred to was a few sentences in the briefing below, which probably should have been written more carefully to refer to the allegedly non-arbitrable agreement. The stipulation, again, as far as I understand, was simply the arbitral panel asking is there any dispute as to arbitrability as to any of the claims we said no? Fraud claim, contract claim, no dispute as to arbitrability. Even if you viewed those statements, which were not as carefully worded as they should have been in that brief, as somehow conceding non-arbitrability on our part, you wouldn't have estoppel because there was no judicial estoppel would exist only if there was some kind of only if the district court accepted that argument of non-arbitrability and it was used to our advantage in some way. But as you know, the district court in this case correctly found that the TSA claim is arbitrable under the plain language of the arbitration agreement. And by the way, if you want to talk about estoppel or changing position, you should look at Mr. Marketos' concession to the arbitral panel that his fraud claim was properly before it, which did not reference any stipulation. What's the citation in the record for that? That is record on appeal 932 to 933. Volcata obviously thought that the fraud claim was arbitrable because it included it in its arbitration demand. At some point during the arbitration, one of the panel members, Judge Gammerman, said seems to me that you could have brought your fraud claim in a Texas court. And Mr. Marketos said, on the record, we could have sued for fraud in Texas, but because there's supplemental jurisdiction with the American Arbitration Association, there's no need to split the claim. I think people who do that are not trying to get justice quickly. They are trying to get leverage, and that was not our intent. And frankly, it's a better case to try for the panel. It would have been a waste of resources, I think. So at the time when the panel asked whether there was jurisdiction over the fraud claim, Volcata said, yes, there is. We can assert this fraud claim here in the arbitration. And again, the fraud claim in the arbitration, which was another state law securities fraud cause of action, which asserted the exact same facts, same elements, same damages, as are now before this Court, is no different than the one that Volcata asserted here in this case in any substantive respect. There is this governing law clause that clearly contemplates that some disputes between these parties might not be subject to the arbitration clause and could be brought in court. Can you give an example of what that might be, given your broad reading of the related to? I can, Your Honor. First of all, let me point out that the governing law clause that Volcata cites contains an express exemption for the arbitration provision. So it clearly says there's, you know, these claims can be brought in court except when they fall in the arbitration provision. Now the merger agreement that between Nuance and Volcata was about 100 pages long. There were about 25 to 30 pages of representations and warranties in the merger agreement. This is all in the record. So any claim asserting any violation of those representations and warranties or any other garden variety contract claim would fall within that, you know, broad litigation provision. Because they didn't relate to the earn-out consideration. Because they don't relate to the earn-out consideration, exactly, Your Honor. And just, if I could touch briefly, I know my red light is on, if I could touch briefly on this narrow and broad arbitration provision. Touch. Touch, Your Honor. Philip Morris rejects the exact argument that Volcata makes about it. It says explicitly that the arbitration clause is broad because it used the term relating to, and it says while the arbitration clause does not encompass the entire MSA, it is broad. It does not lessen the clear intent of the parties that it's broad with respect to the subject matter it touches. Volcata's argument in its reply brief is that it's broad because it reaches the entire MSA. That's exactly the argument that Philip Morris rejected. Thank you. Mr. Marquetas, we'll hear from you next. A little rebuttal. What is your endgame for this litigation? Because it seems, I mean, the arbitration panel might give you damages and your client will be happy. If they rule against you, it does seem like issue preclusion would arise. What's the endgame here? Thank you, Judge Costa. If Your Honor would please take a look at this Court's opinion in Quest Medical. Quest Medical, that's 90F31080. Issue preclusion would apply only if the damages that were being sought in the Texas Securities Act were the same as for statutory fraud. And they're not. I know Mr. Silbert just repeatedly said that Volcata is conceding that the damages that the panel is going to rule on are the same that we're seeking in the Texas Securities Act. They're not. They are different statutes and different remedies. And this Court went through the remedies specific to a Texas Securities Act claim versus a Chapter 27.01 statutory fraud claim in Quest. In that case, Chief Judge A. Joe Fish Is Quest the 90F31080? Yes, Your Honor. You cited that in your principle brief. We sure did. And we pointed out how it delineates between the two statutes. In fact, the Texas Securities Act statute itself contemplates that it is in addition to other remedies, including Chapter 27. In that case, Judge Costa, Judge Fish found no out-of-pocket damages and $101,000 in Texas Securities Act damages for the same violation. That's because the Texas Securities Act has unique remedies that, as this Court pointed out, it goes through in the statute in deliberate detail. The timing is different. The measure is different. So it's only nuance that's saying they're seeking the same damages. We're not. If we had brought this Texas Securities Act claim first, it would not be flavored in this dispute right now with the notion that we're just bringing duplicative claims. What are the damages that you're going to that you're seeking that are not available to you in the arbitration? They are different as follows, Your Honor. They are the market value of the stock at the time of the sale, not the time of the execution, plus any income that nuance has derived from the acquisition of our stock, plus interest at the legal rate. That's the statutory remedy. Out-of-pocket reliance damages merely measures the difference between the value of what someone parted with and what they received, and in a fraudulent inducement claim, that's measured at the time of the inducement into the transaction, not the time of sale. So there are different remedies. That doesn't sound like it's really going to afford you much relief, to tell you the truth. Your Honor, we are now asking for $10 million. It's been hashed out, all of it's been hashed out before the arbitrator. Judge Jolly, I agree, and five years later, here we are. We should have been able to bring this claim in court, and I wanted to address your question, Judge Costa, as to their stipulation, the stipulation that was reached in the arbitration. The trial lawyers who tried the case against me wrote the briefs to Judge Lindsey and signed them. But you said to me earlier, it is in the record. It is. You are sure that stipulation is in the record? Record on Appeal 336, Judge. It says the parties have stipulated. It says they have stipulated. I'm asking you, is the stipulation itself in the record? Your Honor, that was in a conference room in an office in New York. It was in arbitration with no court reporter. The people who were there wrote the briefs, and they've described in the briefing below, and that's why I referred the court to the 919, 1019, and 1022, that it was an agreement to submit an otherwise non-arbitrable claim to arbitration by Mr. David Lender, who was their trial counsel, who signed that brief. There is. Judge Jones has a perceptive point. This case demonstrates sort of the reverse. Arbitration is supposed to be efficient and quick, and now we've got three district judges, Sullivan, Lindsey, Solis, all waiting. Now you've got this court, three of us, all waiting. The position we're in is the opposite of what this arbitration process was supposed to do. Judge Higginson, I could not agree with you more, and frankly, we'd like our money back. The truth of the matter is, Judge Solis dismissed this case almost two years ago. We could have tried this Texas Securities Act claim by now. That's what's so strange about it. We are saying, yes, issue preclusion is what he should have waited for, Judge Costa. There's no reason to dismiss this case without prejudice, based on what we think the arbitration panel is going to award. In that sense, you both just agreed with each other. Lindsey should have waited and perceived what the panel came out with. Judge Higginson, I agree with that. Excuse me. What is your position about our delay in any opinion in this and the arbitration? Your Honor, if the issues were identical for issue preclusion purposes, they must be identical, then I would say waiting behooves you, because you could see what the panel awards and address it in an appeal on the merits or otherwise. But because... No, that's what you said. I mean, like you were going along in a grim, and then all of a sudden... Your Honor, I think it would have been best addressed, Judge Jolly, it would have been best addressed if Judge Lindsey had taken a motion to stay and seen what the effect of the arbitration ruling ultimately is, and then applied that to an argument for claim... issue preclusion. Okay, I think we have your argument in there. Thank you. I understand the interest and the intensity of the part. Thank you, Judge. We'll call the next case of the day.